We'll hear the next case in Re, James Licata. I may please accord my name is John Carberry and I represent the appellant James Licata. Mr. Licata appeals from the approval of a settlement under Rule 9019 of the bankruptcy rules of a dispute between the trustees of the consolidated bankruptcy estates of Mr. Licata himself and related company and parties known as the Mako parties. This settled claims that had gone on for many years primarily in state court proceedings in New Jersey and represented a remarkable turnabout by the trustees of these states. They had litigated those claims in New Jersey State Court for years. They had won two summary judgment motions which had been brought by the Mako parties and had declared that they were fully prepared to go to trial on those claims and had also represented that these were very valuable claims. The question for us is standing? Yes, your honor. Not whether it was a good settlement or a bad settlement, right? Yes. The trustee says there are a hundred and twenty million dollars worth of unsecured claims. The best bid is twelve point six million dollars for those assets. Tell us why you've got standing under those circumstances or whether that's just flat-out wrong given this letter that you submitted? Your honor, the letter we submitted said that the value of the assets were well in excess of the twelve point six million or the hundred twenty million dollars and I feel would have required the court to at least take a further look at that rather than rely on the unsworn evidence. The really argument... Letter sworn? No, your honor. It was not. It was also unsworn evidence, right? But it was the trustees burden to come forward and convince the because they did not come in and present any evidence of the value of the assets. It was simply statements by counsel. It was also the hundred and twenty million dollar issue, your honor, was just statements of counsel that they had reviewed the claims and had determined that of two hundred million that have been filed, perhaps a hundred twenty million dollars worth of claim is good. Did Mr. Licata submit anything other than that letter from the real estate broker? Mr. Licata's counsel at trial indicated that he had reviewed the claims and that he believed that they were not there were not a hundred million dollars in good claims there and part of the problem is these claims had been filed many many years before. These cases go back to 2002. It sounds like the answer to my question is that there was nothing other than the letter and that's correct, your honor. No expert reviewed them or there was no banking witness? There were no witnesses at all, your honor. Judge Schiff repeatedly refused requests to entertain an evidentiary hearing and that's part of our issue. That's our main argument. I'm sorry, it's an argument, another argument you have. Yes, that in light of the representations that were made, the trustee came in and made representations. They said that this is a good settlement. There's, you know, not withstanding that up until January 2014, they had indicated that they were ready to go to trial, that these were very valuable. They then turned about and said, well, we're going to take up 1.5 million dollars for this and rather than, and Mr. Licata objected and based on the information he had at the time, he indicated they thought the assets were worth substantially more than the trustees were indicating. In fact, the trustees never placed a value on the from his knowledge of the underlying claims that these claims were not worth 120 million dollars as was represented by his counsel. So the part of the problem that I have, at least, is that there's a long history to the dispute between the macro parties and Mr. Licata. We have a explicit finding by a judge, a federal judge, saying that Mr. Licata was not credible and that by contrast, Mr. Marco was. And in the letter that was submitted, this Morris letter, the fair market value, according to Judy Morris, of the assets is a billion dollars. And so that, some might say, might strain credulity, but is there anything else? Just as a follow-up to Judge Chin's question, do you have anything else? That's all that was presented to the court, Your Honor. So I come back to my other argument, which was the judge, in light of what was presented, should have at least given Mr. Licata an opportunity to put on some evidence. He did. Well, a couple of judges have done that. So there's a long history and why wasn't the judge entitled to just look at that history and credit the findings of prior judges? And those were other issues that did not necessarily relate to all of these assets, Your Honor. And I would note that ultimately, the New Jersey litigation did go to trial and with the trustees out, Mr. Marco and his associates tried the case against title insurers and he did prevail, but this is part of the district court docket. The decision noted that Mr. Marco had, that it was not a substantial exaggeration to say that Mr. Marco had defrauded at least 16 entities and persons, including the judge in his own bankruptcy case back in 1996, Judge Brown, who was the judge that heard the case in Vermont, and Judge Schiff himself here. So what the panel is being asked to do is to approve a settlement that was approved without the appropriate level of scrutiny by the court between the trustees and . . . We're not being asked to approve a settlement. We're being asked to consider whether you have standing to object to the settlement. And I would simply argue that in light of the presentation that was made to the panel and the lengthy history of this, that there were a lot of issues that have been heard before the court. This had been going on for 12 years by the time the motion to approve the 1919 was submitted, that the court should have at least allowed Mr. Licata to probe the basis for the trustees' decision. Not only did he ask for a full evidentiary hearing when that was denied, he asked, may I please ask some questions of the trustees under oath so that the court can determine whether the trustees have properly considered the appropriate standard under the Iridium case, and was denied that as well. So I would submit that the standing, the court should send this case back for discretion in determining whether or not to take up the evidentiary issues based on the representations that were made by Mr. Licata, and ultimately that it did not apply the appropriate standards under Iridium. Thank you. Thank you. We'll hear from your colleague. May it please the court, Timothy Miltenberger for Richard Cohn, trustee. With me at present the argument today, district court denied Mr. Licata's appeal because he lacked standing. The district court's decision was not clearly erroneous, nor was the bankruptcy court's decision before it. In order to have standing from a bankruptcy order, a party must be directly and adversely affected financially by the order, and Mr. Licata was not directly and adversely affected by the order financially. He's a Chapter 7 debtor, and a Chapter 7 debtor only has standing if he can show, and it's the debtor's burden to show this, that there is a reasonable possibility of a surplus in the case. The claims against the First Connecticut Bankruptcy Estate are $207 million as shown by the claims register. The claims against the Licata Bankruptcy Estate are $251 million as shown by the claims register. There have been a series of small reductions in that because of objections filed by the trustee, but the claims registers in both case both reflect claims in excess of $200 million. They're both deemed allowed under the United States Bankruptcy Code, and they're also deemed to be prima facie evidence of an allowable claim under the Federal Rules of Bankruptcy Procedure. The trustee did tell the bankruptcy court that based on his analysis, he believed the claims would be reduced to about $120 million after reducing duplicates, but that is nowhere near the value of the assets that was presented to the bankruptcy court. The assets are claims in litigation, and they were claims that were being sold by Mr. Licata in his case, and they were claims that were being sold by the trustees. So your view is that the proper number is actually $120 million? I mean, I know that there's a prima facie evidence issue, but technically, for purposes of this record, $120 million? The trustees represented to the bankruptcy court that based on their analysis, that the claims against the estate should total approximately $120 million. So your point is that the assets don't come anywhere near that? Nowhere near that, Your Honor. So what are the assets, then? You mentioned the various claims. The assets are, in fact, the disputed claims that the trustees were litigating with Mr. Macco in New Jersey. During Mr. Licata's Chapter 11 case, while he was the fiduciary of the bankruptcy estate, he supported sales of those claims for $6.26 million for $5 million. At auction, the price of the claims was raised to approximately $11.25 million, but the most anybody would actually pay for the assets was $5.4 million. The actual settlement amount was $7.5 million, is that correct? The settlement amount with Mr. Macco was $1.5 million. However, there was also a waiver of a secured claim that should have been in priority to the bankruptcy estate, so it would raise it to approximately $6.5 million to $7.5 million. Was there not a $12 million offer? There was a $12 million offer to purchase the assets in Chapter 7 that was made pursuant to an option and purchase agreement. By an entity known as CB3 Acquisitions, CB3 paid $75,000, obtained an option to purchase the assets for $12.6 million, but did not exercise its option. Within a year, it was just a bid. And within a year, CB3 Acquisitions had filed for its own bankruptcy petition. Do you discount that? They didn't have the money to pay, but importantly, when I compare it to the Mac Morris letter that valued the assets at $1 billion, I can't understand why a party that had an option to buy an asset package for $12.6 million to buy $1 billion worth of assets didn't exercise its option price. I don't understand why Mr. Licata, while he was the debtor in possession, would agree to sell $1 billion worth of assets for a total amount of $11.25 million, or lesser amounts, which he urged the Bankruptcy Court to approve, if what he was sitting on was a $1 billion asset package. The Mac Morris letter values real estate in Jersey City, New Jersey. The bankruptcy estates never owned real estate in Jersey City, New Jersey. The bankruptcy estates owned causes of action between Mr. Licata and Mr. Maco. As your honors have already noted, there was a trial between Mr. Maco and Mr. Licata as part of these bankruptcy cases in which Mr. Maco prevailed, and the bankruptcy court for the District of Vermont found that Mr. Licata was acting as Mr. Maco's nominee, that he, in fact, did not own the properties, that the properties were always owned by Mr. Maco, in which case the bankruptcy estates owned nothing. Mr. Carberry has advised the court that there has been a decision in New Jersey. That decision in New Jersey found that Mr. Licata was Mr. Maco's nominee for 18 different reasons, including the three contemporaneous agreements between- Reaffirmed what Vermont found. Absolutely, your honor. Reaffirmed what Vermont found. Based on all of that evidence, and the evidence in the bankruptcy court, the proofs of claim are evidence that the bankruptcy court can and should take note of. The bankruptcy sales provide evidence to the bankruptcy court. The decision of Judge Brown in Vermont is a decision that the bankruptcy court should take cognizance of. That decision was affirmed by the District of Vermont, and then affirmed by this court. The bankruptcy court had all of that evidence in front of it, and ultimately found that Mr. Licata did not make a colorable claim for standing. He didn't make a colorable claim for standing because his only dispute with the claims register was the argument of counsel that said, quote, I don't think I see $100 million worth of claims here. And the only evidence he put in with regard to the asset value was a letter that said that the assets are worth $1 billion from somebody who Licata's lawyer told the bankruptcy court was neither a broker nor an appraiser. It contained hearsay. It contained opinion evidence without any methodology or any qualification. The bankruptcy judge found that of insignificant probative value, and the district court agreed. For all of those reasons, Mr. Licata failed to carry his burden that he had standing in the bankruptcy case because he failed to carry his burden that there was a substantial possibility that there would be a surplus in the bankruptcy case that could go to him. A reasonable possibility. A reasonable possibility. Thank you, Your Honor. Thank you. Thank you. I would just note that on the issue of the amount of the claims, that counsel for the trustees indicated that the total amount of the claims and the claims registers were reduced by duplicate claims for the most part, which got it down from $200 to $120 million. There's no evidence and there's no representation that the trustees have ever made any effort to review the balance of the claims register to determine whether those claims are appropriate or not. And until the January— Your burden? Yeah. I'm sorry? Isn't that your burden to prove standing? It is our burden to prove standing, Your Honor. Did you do that here? I think we did. I think we created enough of an issue that the court should have opened the evidentiary record to allow us to question the trustees on the basis and to have an evidentiary hearing on the amount of the claims and the amount of the value of the assets. My point on the claims was simply that up until January of 2014, when this particular settlement was submitted, there was no reason for Mr. Licata to bring objections to claims, and at that point he would have had to prosecute dozens of objections to claims to try and establish this as opposed to being given an opportunity to apprise the court of his knowledge concerning the validity of those claims. Thank you. It was a well-reserved decision.